UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

                                    File No.  2:08-CR-18

v.

                                      HON. ROBERT HOLMES BELL

ROBERT CHARLES GENSCHOW, SR.,

        Defendant.

_____/

**O P I N I O N**

    This matter is before the Court on Defendant's motion to dismiss the indictment for lack of jurisdiction.  (Dkt. No. 20.)  For the reasons that follow the motion will be denied.

**I.**

    Defendant Robert Charles Genschow, Sr. has been charged in a two-count indictment with unlawful cutting and injury to trees in violation of 18 U.S.C. § 1853, and theft of tribal property in violation of 18 U.S.C. § 1163.  Specifically, the indictment charges that between August 1, 2007, and October 2, 2007, Defendant unlawfully arranged for the logging of certain property known as the Ontonagon Reservation in Ontonagon, Michigan (the W1/2, NW 1/4 of Sec. 26, T53N, R38W) (the "Property"), that is held in trust for the use and occupancy of the Keweenaw Bay Indian Community ("KBIC").  Defendant contends that because the Property is held in trust for the Ontonagon Band, the KBIC has no authority over

1

the Property, and that accordingly the indictment is defective, the Court lacks jurisdiction, and the indictment should be dismissed.

The relevant historical documents are before the Court in Joint Exhibits A through S, and are undisputed. The dispute comes in how to interpret the historical documents and what legal conclusions can be drawn from them.

In the 1854 Treaty with the Chippewa, the Chippewas of Lake Superior ceded certain lands to the government, in exchange for lands held apart for them. The L'Anse, Vieux De Sert, and Ontonagon bands all received reservation lands under the Treaty. (Ex. N, 1854 Treaty, Art. 2, 1st, 6th.)

Antoine Jocco or Menogezhick received an allotment to the Ontonagon Reservation Property in 1875. In 1912 he relinquished his allotment to the Property because he received an allotment of land on the Bad River Reservation. (Ex. I, Jocco Aff.) The Secretary of the Interior accepted Jocco's relinquishment of his allotment to the Property and ordered his allotment to the Property cancelled on July 12, 1912. (Ex. J.)

In 1935 the L'Anse, Lac Vieux Desert, and Ontonagon Bands of Chippewa Indians were involved in discussions with the Department of the Interior ("DOI") regarding their desire to organize and be recognized as the Keweenaw Bay Indian Community ("KBIC") pursuant to Section 16 of the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. § 476. On December 2, 1935, Peru Farver, a DOI Field Agent, advised J. C. Cavill, Chairman of the

KBIC Constitution Committee, that the Ontonagon Band was included in the proposed KBIC

"because the Ontonagon Reservation no longer exists":

> There are only a few scattered pieces of Indian land left within the confines of the original reservation, and it is understood only one Indian family resides there.  Most of the Ontonagon band now being located at L'Anse, and affiliated with the L'Anse people.

(Ex. D, Farver Letter of 12/2/1935.)

On December 9, 1935, Government Field Clerk E.J. Warren sent a letter to Cavill

describing the status of the Ontonagon Reservation as follows:

> [W]hile the Ontonagon Reservation has always been spoken of and designated as a separate reservation the fact is the only thing that ever really took place on the Ontonagon reservation was the allotting of land in severalty to certain Indians – those living on the territory.  No village or reservation was ever established at that point in recent years.  Most of the lands were sold, and today only a few of the original allotments, inherited land, are still intact and unsold.  No Indians now reside upon the Ontonagon Reservation and only one or two reside in that section of the country.

(Ex. E, 12/9/1935 letter from E.J. Warren, incorporated in the 12/23/1935 memo from

Charlotte T. Westwood, DOI Assistant Solicitor, to the Comm'r of Indian Affairs.)

On June 15, 1936, William Zimmerman, Assistant Commissioner of Indian Affairs,

sent a letter advising Cavill that Article I of the proposed KBIC Constitution, relating to

territory, should omit the words "and to any restricted land remaining on the Ontanagon

Reservation" because "it appears that all of the Indians of the Ontanagon Band actually live

on the L'Anse Reservation."  (Ex. F, 6/15/36 letter from Zimmerman to Cavill.)

> While there are a number of members of the Ontanagon Band who have allotments on the Ontanagon Reservation it is not believed that the tribe could

3

legally exercise jurisdiction over such land. Where several tribes are organizing to form one tribal body it is provided by the Reorganization Act that such tribes must reside on one reservation. The allotted lands of the Ontanagon Indians could be made subject to the jurisdiction of the Keweenaw Bay Indian Community if the individual owners, with the consent of the Secretary of the Interior, were to convey them to the Keweenaw Bay Indian Community in accordance with the provisions of section 4 of the Indian Reorganization Act. . . . The omission of reference to the restricted land remaining on the Ontanagon Reservation should not be interpreted as preventing the Community from subsequently acquiring jurisdiction over such land.

(*Id.* ¶ 2.) Zimmerman also indicated that the word "Ontonagon" should be omitted from Article VII section 1 because "the community has jurisdiction only over the lands included within the L'Anse Reservation." (*Id.* ¶ 15.)

The Constitution of the KBIC was adopted in December 1936. The preamble to the Constitution provides in part:

We, the L'Anse, Lac Vieux Desert and Ontonagon Bands of Chippewa Indians **residing within the original confines of the L'Anse Reservation**, . . . . do ordain and establish this Constitution and By-laws for our community which shall be known as the Keweenaw Bay Indian Community.

(Ex. C, KBIC Const., Preamble (emphasis added).) Article I of the KBIC Constitution provides that "[t]he territorial jurisdiction of this Constitution shall embrace the land within **the original boundary lines of the L'Anse Reservation** . . . and any and all future additions of land acquired within or without said boundary line by the Secretary of the Interior or by the Tribe . . . ." (*Id.* at art. I (emphasis added).) Article II provides that the membership of the KBIC consists of "[t]he bona fide enrolled members of the L'Anse, Lac Vieux Desert and Ontonagon Bands of Chippewa Indians as shown on any of the allotment rolls of the L'Anse,

Lac Vieux Desert, and Ontonagon Reservations, and their descendants **who were residing**

**within the limits of the L'Anse Reservation** of June 1, 1934." (*Id.* at art. II, § 1(a)

(emphasis added).)   Article VII provides that tribal lands include "[t]he unalloted lands of

the Community and all lands which may **hereafter be acquired** by the Community or by the

United States in trust for the Community shall be held as tribal lands . . . ." (*Id.* at Art. VII,

§ 2 (emphasis added).)

In 1971, the Acting Area director of the Great Lakes Region of the Bureau of Indian

Affairs ("BIA"), sent a memorandum to the Superintendent of the Great Lakes Agency

regarding the status of tribal land on the Ontonagon Reservation that had reverted to tribal

ownership when allotments had been cancelled. (Ex. Q, 6/22/1971 memo.) The Acting Area

Director indicated that it appeared to him that the 160 acres of tribal land remaining in trust

on the Ontonagon Reservation "is not a part of or within the jurisdiction of the Keweenaw

Bay Community.  It is in effect an unorganized tribe but independent from all other existing

groups."  However, he requested input from the Superintendent on this issue and requested

verification of the title status of this property from the Titles and Records Section.  (*Id.*)

On July 21, 1971, the Titles and Records Section of the BIA issued a Title Status

Report indicating that the Property was held in trust for the Ontonagon Band of Chippewa

Indians.  (Ex. J.)  Although the Title Status Report shows ownership of the Property in the

name of the Ontonagon Band, it assigns the Property a Reservation Code of 476, which is

the tribal code for "Ontonagon, Keweenaw Bay."  (Ex. K.)

In 1975 heirs of Joseph Chossa who claimed an interest in Chossa's allotment on the Ontonagon Reservation, sought information from the BIA on how to organize the Ontonagon Band of Chippewa Indians. (Ex. L.) The BIA responded that "[t]he only Ontonagon Band of which we are aware is organized together with the L'Anse and Lac Vieux Desert Bands to make up the Keweenaw Bay Indian Community." (Ex. M.)

On January 28, 1992, DOI Field Solicitor Mark Anderson issued an opinion concluding that the public domain allotments within the Ontonagon reservation were **not** subject to the jurisdiction of the KBIC because the KBIC constitution limits the exercise of tribal power to lands within the L'Anse reservation boundaries. (Ex. P, Anderson letter of 1/28/92.) According to Anderson, the land at issue was not acquired after the adoption of the KBIC constitution. (*Id.*)

In 1997 Defendant Robert Genschow Sr. (Lone Wolf, Tribal Chairman) and Michael Chossa (Young Buck, Election Board Chairman) certified that the Constitution of the Ontonagon Band of Lake Superior Chippewa had been ratified by a unanimous vote of all qualified voters of the Ontonagon Band of Lake Superior Chippewa. (Dkt. No. 27, Def.'s Supplemental Filing, Attach. 1.)

On July 2, 2004, in response to an inquiry as to who had authority to approve a lease of lands held in trust for the Ontonagon Band, DOI Field Solicitor Priscilla A. Wilfahrt noted that the title status report indicated that title is held by the United States in trust for the Ontonagon Band, but that the Ontonagon Band was not named on the list of recognized

6

tribes.  68 Fed. Reg. 68180 (December 5, 2003).  She gave the following opinion regarding

the status of the Ontonagon trust property:

> Our files indicate that the Ontonagon Band of Indians voted to organize with
> the L'Anse Chippewa Indians to form the Keweenaw Bay Indian Community.
> See, Constitution and Bylaws of the Keweenaw Bay Indian Community,
> Preamble.  Thus, the property held for the Ontonagon Band, since it no longer
> exists, should be deemed to be held by the Keweenaw Bay Indian Community.

(Ex. B, Wilfahrt 7/2/04 Letter).   She stated that the January 28, 1992, opinion from the

Solicitor's office did not bar the KBIC from exercising control over the property:

> [T]he Keweenaw Bay Indian Community acting in a proprietary capacity could
> execute a lease for this property whether or not it may exercise regulatory
> jurisdiction over the property.  As the successor in interest to the property of
> the Ontonagon Band [the KBIC] has the rights of any property owner to
> manage and control the use of its property.  These rights are independent of its
> regulatory authority as a sovereign entity.

(*Id.*)  Although it was not necessary to her decision, Wilfahrt added that she did not read the

1992 opinion to preclude the KBIC from exercising regulatory authority over the property

because the property was acquired by the Secretary for the KBIC in 1971 when the individual

allotments were canceled and title was taken in trust in the name of the Ontonagon Band.

(*Id.*)[1]

---

[1]Wilfahrt acknowledged that she had no explanation for why the property was taken
in trust in the name of the Ontonagon Band when it was no longer in existence:

> Our file does not reveal why title was denominated this way since by 1971 the
> Ontonagon Band had already organized as part of the Keweenaw Bay Indian
> Community and no longer existed as independent recognized tribal entity.
> Denomination of title in this fashion created the legal anomaly that the United
> States purported to hold land in trust for a nonexistent entity, with the equally
>
> (continued...)

On May 28, 2008, BIA Realty Officer Esther M. Thompson made the following certification regarding the Property:

> Said parcel was initially held in the name of the Ontonagon Band of Chippewa Indians pursuant to the Treaty with the Chippewa, 1854.  Parcel was allotted to Me No ge zhick (aka: Antoine Jocco) via restricted fee patent, dated July 19, 1875.  Said allotment was cancelled July 12, 1912 due to the allottee receiving a second allotment in Wisconsin.  Ownership of the allotment then reverted to the "Ontonagon Band" which is now under the jurisdiction of the Keweenaw Bay Indian Community per Field Solicitor's Opinion dated July 2, 2004.

(Ex. O.)

## II.

Defendant contends that because the historical documents unequivocally show that the  Ontonagon Reservation Property was not included in the lands that made up the KBIC, the KBIC has no jurisdiction to complain about his activities on the Property.

In response, the government contends that when the DOI accepted the constitution of the newly formed KBIC in 1936, the Ontonagon Band ceased to exist as a separate entity. As a result, the government contends that any property held in trust for the Ontonagon Band would necessarily come under the control of the federally recognized entity, the KBIC.

It appears that when the KBIC was formed, contrary to the assumptions of the DOI, not all of the Ontonagon Reservation was in fact held in allotments or sold.  There was at

---

[1](...continued)
anomalous result that no one could use or benefit from the trust.  To avoid such a ridiculous result it is reasonable to assume that the successor in interest to the Ontonagon Band was the intended beneficiary of the trust.

(*Id.*. at fn.1.)

least one parcel, the Property at issue in this case, that was held by the government in trust for the Ontonagon Band.  Even if the government was aware of this Property, it appears that Property would nevertheless not have been made a part of the territorial jurisdiction of the KBIC because, according to the BIA, "[w]here several tribes are organizing to form one tribal body it is provided by the Reorganization Act that such tribes must reside on one reservation."  (Ex. F 1-2.)

Although the KBIC Constitution describes its territorial jurisdiction as also embracing "future additions of land" acquired by the Secretary of the Interior or the Tribe, (KBIC Const., art. I), the Court is puzzled by the suggestion in the Field Solicitor's July 2004 opinion that the Property is after-acquired property within the meaning of the KBIC constitution.  This finding was not necessary to the opinion on the issue of leasing and it directly contradicts the Field Solicitor's January 1992 opinion  that the Ontonagon Property is not after-acquired property.  Moreover, this finding is based upon the assumption that the Property was acquired by the Secretary in 1971.  In fact, the Property came back into trust in 1912, before the formation of the KBIC, which explains why title is in the name of the Ontonagon Band.  Accordingly, the Court is reluctant to adopt the Field Solicitor's opinion that the Property is after-acquired property within the territorial jurisdiction and regulatory authority of the KBIC as a sovereign entity.[2]

---

[2]As explained in more detail below, the Court does not disagree with the Field Solicitor's opinion that the KBIC, as the successor in interest to the Ontonagon Band, has the proprietary rights of a property owner to manage and control the use of the Ontonagon

(continued...)

Nevertheless, even if the KBIC does not have regulatory jurisdiction over the Ontonagon Property, there is no dispute that the federal government retains the fee title to reservation lands and that it holds the property in trust for the benefit of the tribe. *See generally Idaho v. United States*, 533 U.S. 262 (2001) (holding that the federal government held submerged reservation lands in trust for the Coeur d'Alene Tribe); *United States v. Mitchell*, 463 U.S. 206, 226 (1983) (holding that the government had fiduciary obligations in the management and operation of Indian lands and resources). The statutes Defendant is charged with violating recognize and reflect the government's fiduciary duty to protect trust lands and resources. For example, Count I alleges tree cutting in violation of 18 U.S.C. § 1853. This statute applies to "any Indian reservation, or lands belonging to or occupied by any tribe of Indians under the authority of the United States, or any Indian allotment while the title to the same shall be held in trust by the Government . . . ." *Id.* Count II alleges theft from an Indian tribal organization in violation of 18 U.S.C. § 1163. This statute applies to property "belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization." *Id.*

Defendant does not dispute the government's jurisdiction to prosecute the crimes charged under these statutes. Defendant nevertheless contends that the Indictment is defective because both counts allege that the Property is held in trust by the government for

---

[2](...continued)
Reservation Property.

10

the KBIC.  Defendant contends that this allegation is incorrect because the Property belongs to and is for the use of the Ontonagon Band, not the KBIC.  He contends that as a descendent of one of the members of the Ontonagon Band who did not become a member of the KBIC, and as the elected chief of the present day Ontonagon Band, he has the right to use the Property.

Defendant's argument is not supported by the facts or the law.  Although the Property was taken in trust for the Ontonagon Band, the majority of the Ontonagon Band organized to form the KBIC.  The historical evidence provides that as of 1935 most of the Ontonagon Band was located at L'Anse and affiliated with the L'Anse people, that either one or no families resided on the Ontonagon Reservation, and that only one or two resided in that section of the country.  (Ex. D, E.)  While it was understood that there were other members of the Ontonagon Band who were not covered by the 1936 KBIC constitution, those Ontonagon Indians were not recognized as a separately organized tribe in 1936 nor have they been recognized as a tribe since that date.  *See* 73 Fed. Reg. 18553-01 (April 4, 2008) (List of Federally Recognized Tribes).

Tribal property interests belong to the tribe as a community or political body rather than to the individual members.  *United States v. Jim*, 409 U.S. 80, 81 (1972); *Sizemore v. Brady*, 235 U.S. 441, 446-47 (1914); *The Cherokee Trust Funds*, 117 U.S. 288, 308 (1886).  Accordingly, when the Ontonagon Band voted to join the KBIC, the government's fiduciary duty stayed with the political body of the Ontonagon Band, and the Property interests of the

11

Ontonagon Band became the property interests of the KBIC as successor in interest to the Ontonagon Band. The Indictment accordingly is not defective in charging that the Property is held in trust for the KBIC.

The only recognized Ontonagon Band as of the date of the Indictment was the Ontonagon Band that merged into the KBIC. Although Defendant claims to be the chairman of the present day Ontonagon Band of Lake Superior Chippewa, this band has not been recognized by the federal government. Defendant has not cited, and the Court is aware of no authority that would support Defendant's assertion that an unrecognized band can have any legal rights to property held in trust by the government for an Indian tribe.

BIA regulations establish the procedure for obtaining federal acknowledgment and recognition of Indian groups as Indian tribes. 25 C.F.R. § 83.1-83.13 (2008). "Acknowledgment of tribal existence by the Department is a prerequisite to the protection, services, and benefits of the Federal government available to Indian tribes by virtue of their status as tribes." 25 C.F.R. § 83.2. In *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543 (10th Cir. 2001), an Indian group sought a judicial ruling that it was a recognized tribe by virtue of the fact that its members were descendants of a tribe whose sovereignty had been recognized in an 1854 Treaty. The Tenth Circuit rejected the request for recognition because the group had not obtained recognition from the BIA. The Court observed that although the 1854 Treaty and the decision in *The Kansas Indians*, 5 Wall. 737, 72 U.S. 737, 756 (1866), recognized the sovereignty of the Shawnee Tribe in the nineteenth century, those

events without more did not speak to the status of the tribe today.  253 F.3d at 548.  "The

BIA has been delegated the authority to determine whether recognized status should be

accorded to previously unrecognized tribes."  *Id.* at 549.  The Tenth Circuit required the

plaintiff to exhaust its administrative remedies before the BIA before seeking judicial review.

*Id.*  at 551.

> The purpose of the regulatory scheme set up by the Secretary of the Interior is
> to determine which Indian groups exist as tribes. 25 C.F.R. § 83.2. That
> purpose would be frustrated if the Judicial Branch made initial determinations
> of whether groups have been recognized previously or whether conditions for
> recognition currently exist.

*Id.* (quoting *James v. United States Dep't of Health and Human Serv.*, 824 F.2d 1132, 1137

(D.C. Cir.1987)).  *See also Burt Lake Band of Ottawa and Chippewa Indians v. Norton*, 217

F. Supp.2d 76, 79 (D.D.C. 2002) ("historical recognition by the Executive Branch does not

allow a defendant to bypass BIA, even if the recognition occurred in a treaty.").

The government has not recognized any group other than the KBIC as the present day

Ontonagon Band.  Accordingly, records reflecting that the Property is held in trust for the

Ontonagon Band must be understood to mean that the government holds the Property in trust

for the KBIC.

The Court is satisfied that the government has jurisdiction to prosecute the crimes

charged in the Indictment and that the Indictment is not defective for alleging that the

Property is owned in trust for the KBIC.  Accordingly, Defendant's motion to dismiss will

be denied.

An order consistent with this opinion will be entered.


Dated: <u>November 14, 2008</u>                    <u>/s/ Robert Holmes Bell</u>
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE